UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRY L. KUHN, | : | CIVIL NO. 3:**CV-04-1280** |
| | : | |
| Plaintiff | : | (Judge Nealon) |
| | : | |
| v. | : | (Magistrate Judge Smyser) |
| | : | |
| JOANNE B. BARNHART, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

The plaintiff has brought this civil action under the authority of 42 U.S.C. § 1631(c) to obtain judicial review of the decision of the Commissioner of Social Security denying the claim of the plaintiff for Social Security supplemental security income.

On November 20, 2002, the plaintiff, Terry L. Kuhn, applied for disability insurance benefits.  He claimed that he had become disabled on June 27, 2002, due to bilateral shoulder instability, trigger finger release, brachial plexopathy, right carpal tunnel syndrome, bilateral tarsal tunnel syndrome, right hand and elbow degenerative arthritis, spurring of the right elbow, left ulnar neuropathy, and left wrist fusion.

His claim was denied initially and on reconsideration. The plaintiff filed a request for a hearing, and a hearing was held before an administrative law judge ("ALJ") on January 7, 2004. The plaintiff testified at the hearing as well as Andrew Caparole, a vocational expert.

The plaintiff was born on July 30, 1950. He was fifty-two (52) years old at the time of his initial filing and fifty-three (53) years old at the time of the ALJ's unfavorable decision. The plaintiff testified that he obtained a tenth grade education before dropping out. He can read English, but has difficulty writing and spelling. (TR. 29,30). His past relevant work includes work as a welder and janitor. (TR.31). He stated that he has been disabled since July 27, 2002 when he fell and injured his left hand and wrist. He receives worker's compensation. (TR. 27, 28).

The plaintiff began experiencing difficulty with his left shoulder in the mid 1980s. He stated that the difficulty was the result of deteriorated muscles and that his doctors informed him that joint surgery would not help. (TR. 36). The plaintiff

2

did not undergo physical therapy for the left shoulder and the only medication he was taking was Neurontin for nerve damage. (TR. 37).

In 1992, Dr. Salivo performed surgery on the plaintiff's left shoulder, because the shoulder constantly dislocated (TR. 37).  Plaintiff reported that the surgery did not improve the condition.  (TR. 38).  Dr. Salivo performed 2 subsequent surgeries on him.  (TR. 38).

After the first surgery in 1992, the plaintiff continued to work as a welder.  He stated that this work required significant use of his left shoulder. (TR. 38).  At that time he was cautioned by his doctor to obtain lighter work, but, he said, he could not afford to accept a position at a lower wage than he was paid as a welder.  (TR. 38).  Dr. Salivo recommended that he undergo a left shoulder fusion, but he chose not to.  (TR. 39).

In 2001, the plaintiff underwent surgery on his right shoulder because of a torn rotator cuff.  (TR.42).  After this

3

surgery, he was no longer capable of working as a welder.  He
began work as a janitor for the school district.  (TR. 42).

The plaintiff testified that on an average day, he wakes up
at 7:00 a.m.  Once awake, he takes care of his personal needs,
makes coffee, eats, picks up his mail and perhaps makes some
telephone calls.  (TR. 55-56).  He spends eighty to ninety
percent of his day watching television because his mobility is
hampered by tarsal tunnel syndrome in both feet.  (TR. 56-57).
The tarsal tunnel syndrome causes pain and numbness that
radiates up his legs and forces him to sit down.  (TR. 65).  He
stated that he goes to bed anytime between 9:00 p.m. and
midnight, but that he is unable to sleep.  (TR. 58).  The
plaintiff did not report his sleep problems to any of his
doctors. (TR. 58).

The plaintiff continues to have pain on the top and side of
his left hand and stated that he has hardly any grip strength.
(TR. 59, 60).  He often drops things that he attempts to pick up
and has to use two hands to open a jar or to drink a cup of
coffee.  (TR. 60).  When he goes grocery shopping, he carries

4

the bags over his forearms due to his lack of grip strength. (TR.60).  Since the time that the plaintiff had applied for disability benefits, he has put his house up for sale.  He stated that his impairments render him unable to maintain his house.  (TR. 65).  He is still able to drive his car but, he stated, he switches hands every so often in order to grip the steering wheel.  (TR. 65).

The plaintiff testified that he has carpal tunnel syndrome in his right hand, which causes numbness and severe spurring in the right elbow, resulting in an inability to fully extend his right arm.  (TR. 61).  According to the plaintiff, he cannot use his hands overhead or lift and carry 1 to 10 pounds for 1 to 3 hours a day.  (TR. 64).

Andrew Caporale, a vocational expert, testified.  He provided examples of jobs that a person of the plaintiff's age, education and work experience with a residual functional capacity for light work can perform.  (TR. 71-72).  He identified light exertional level and sedentary exertional level jobs.  (TR. 71-73).

5

On January 23, 2004, the ALJ issued her decision denying the plaintiff benefits.  (TR. 14-22).

The plaintiff filed his complaint with this court on June 14, 2004.  On August 18, 2004, the defendant filed an answer to the complaint and a copy of the administrative record. Pursuant to Local Rules 83.40.4 and 83.40.5, the plaintiff filed his brief on October 4, 2004, and the defendant filed her brief on November 8, 2004.  The plaintiff filed a reply brief on November 15, 2004 pursuant to Local Rules 83.40.6.

If the Commissioner's decision is supported by substantial evidence it must be affirmed.  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995).  Substantial evidence is more than a mere scintilla of evidence but less than a preponderance.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

6

A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

To facilitate review of the Commissioner's decision under the substantial review standard, the Commissioner's decision must be accompanied by a "clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1381). Conflicts in the evidence must be resolved and the Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* At 706-707. In determining whether the Commissioner's decision is supported by substantial evidence the

7

court must scrutinize the record as a whole.  *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner has promulgated regulations creating a five-step process to determine if a claimant is disabled.  The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairments meet or equal a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and, (5) whether the claimant's impairment prevents the claimant from doing any other work.  *See* 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920.

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he is, as the result of a severe impairment or combination of impairments, unable to engage in his past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and

8

work experience can perform.  *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

    The ALJ determined that the plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability.  The ALJ found that the plaintiff has medically determinable impairments that could reasonably be expected to cause his symptoms.  She determined that those impairments, while severe, do not meet or medically equal one of the listed impairments.

    The ALJ found that the plaintiff maintains the residual functional capacity to perform a significant range of light work and has the ability to stand for 8 hours, to walk for 8 hours, and sit for 8 hours in an 8 hour workday with normal breaks; to lift or carry 10 pounds frequently and 20 pounds occasionally; to occasionally use his left arm for pushing or pulling five pounds or less; to occasionally climb, stoop, kneel, or crouch; to occasionally reach or handle things with his left arm; to occasionally work with vibrating objects or moving parts with his right arm (but never the left); and to occasionally tolerate

9

exposure to extreme cold, heat, humidity or liquids.  The ALJ
found no residual functional capacity for climbing ropes,
ladders or scaffolds for crawling; for constant repetitive work
with the right arm; or for work around fast moving machinery.

The ALJ further determined that the plaintiff is unable to
perform any of his past relevant work and that transferability
of skills is not an issue in this case.  At the hearing, the ALJ
presented to the vocational expert a hypothetical person with
the plaintiff's age, education, work history and skills,
directing the witness to assume that the person can perform a
significant range of light work.  On the basis of the vocational
expert's testimony, the ALJ determined that the plaintiff's
impairments do not prevent him from performing work and
therefore found him not to be disabled.

On appeal, the plaintiff presents several arguments.
First, he asserts that substantial evidence does not support the
ALJ's conclusion that he is capable of more than sedentary work.
Second, he asserts that the vocational expert's testimony does
not support the ALJ's finding that he is capable of performing

light work within the national economy.  Finally, he argues that
the ALJ erred in finding his tarsal tunnel syndrome to be a non-
severe impairment.

     The plaintiff asserts that substantial evidence does not
support the conclusion that he can perform full-time, light
work.  If the plaintiff were limited to sedentary work, he would
be entitled to disability benefits because he is over 50 years
of age, has a limited education and has no transferable skills.
Rules 201.10 and 202.11, Medical Vocational Tables.  He contends
that the ALJ's assessment is more compatible with sedentary work
than it is with a significant range of light work. (Doc.6,
p.13).  The question whether a finding of a residual functional
capacity for light work is supported by substantial evidence is
a critical question here.

     The plaintiff submits that the ALJ improperly substituted
her own view of the medical evidence when she rejected a portion
of an evaluation by Dr. Salvagno, which stated a finding that
the plaintiff is limited to part time work.  (Doc. 6, p.13).
The plaintiff also asserts that the ALJ did not accurately

11

interpret Dr. Stowell's evaluations or give due credit to the opinion of Dr. Ashby. (Doc. 6, p.14). For the following reasons we find the plaintiff's arguments to have merit.

In determining the plaintiff's residual functional capacity, the ALJ must consider all symptoms, including pain, and the extent to which such symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 96-7p. The ALJ must also consider any medical opinions which reflect judgments about the nature and severity of the impairments and resulting limitations. 20 C.F.R. § 404.1527 and SSR 96-2p and 96-6p.

The ALJ found that the medical record establishes that the plaintiff has a history of treatment and surgery for bilateral shoulder instability, trigger finger release, left wrist surgery, degenerative arthritis in the right hand and elbow, brachial plexopathy, right carpal tunnel syndrome, and bilateral tarsal tunnel syndrome. The ALJ found that these are medically determinable impairments that could reasonably be expected to

12

produce the symptoms alleged by the plaintiff.  However, the ALJ
rejected the implication that there is a substantially complete
relationship between impairments and symptoms, finding instead
that the plaintiff is not entirely credible regarding the
severity and limiting effects of his symptoms.

The Social Security Regulations provide a framework under
which a claimant's subjective complaints are to be considered.
20 C.F.R. § 404.1529.  First, symptoms, such as pain, shortness
of breath and fatigue are to be considered to affect a
claimant's ability to perform work activities only if such
symptoms result from an underlying physical or mental impairment
that has been demonstrated to exist by medical signs or
laboratory findings.  20 C.F.R. § 404.1529(b).  Once a medically
determinable impairment which results in such symptoms is found
to exist, the Commissioner must evaluate the intensity and
persistence of such symptoms to determine their impact on the
claimant's ability to work. 20 C.F.R. § 404.1529(b).  In so
doing, the medical evidence of record is considered along with
the claimant's statements. 20 C.F.R. § 404.1529(b). Social
Security Ruling 96-7p gives the following instructions in

13

evaluating  the credibility of the claimant's statements

regarding his symptoms:

> In general, the extent to which an individual's
> statements about symptoms can be relied upon as
> probative evidence in determining whether the
> individual is disabled depends on the credibility of
> the statements.  In basic terms, the credibility of
> an individual's statements about pain or other
> symptoms and their functional effects is the degree
> to which the statements can be believed and accepted
> as true. When evaluating the credibility of an
> individual's statements, the adjudicator must
> consider the entire case record and give specific
> reasons for the weight given to the individual's
> statements.

SSR 96-7p.


In assessing the plaintiff's credibility, the ALJ pointed

to perceived inconsistencies in the plaintiff's statements about

side effects from his medication.  The ALJ may consider the

entire record in determining the plaintiff's credibility.  SSR

96-7p.  On November 27, 2002, the plaintiff denied side effects

from any medications (TR. 149), and on January 3, 2003, he

stated that they make him tired.  (TR. 133).  The ALJ found

that, in either case, there is no indication that the plaintiff

reported any side effects from medication to his treating

sources or that changes were required due to such side effects.

The ALJ did not find the plaintiff's testimony regarding his tarsal tunnel to be credible. (TR. 17). The plaintiff testified that the tarsal tunnel in his legs causes pain and numbness that radiates up his legs and pain after standing on hard floors for ten minutes. (TR. 56). The ALJ stated that Dr. Stowell had told the plaintiff that tarsal tunnel would not account for such a distribution of pain. (TR. 445). Dr. Stowell had also recommended to the plaintiff that the plaintiff be evaluated by a foot and ankle specialist because he did not consider himself to be an expert. (TR.445). The ALJ found no evidence that the plaintiff pursued treatment or further evaluation for this condition, and reasoned that the lack of further treatment undermines the plaintiff's statements regarding the severity and persistency of these symptoms. (TR. 17).

The ALJ found that the record documents numerous complaints and surgical procedures in both of Mr. Kuhn's arms. (TR. 16). However, the ALJ determined, the evidence does not establish that these resulted in an inability to perform fine and gross

manipulation effectively or in limitations that would preclude all work.  (TR. 16).

In January, 2002, Dr. Salvagno had stated that no surgical intervention was indicated for bilateral shoulder instability. (TR. 334).  In March, 2002, Dr. Salvagno had reported that Mr. Kuhn had diagnostic evidence of degenerative joint disease in the right hand, right carpal tunnel syndrome and left ulnar neuropathy.  That doctor had indicated that arthroplasty of the right MCP joint and left ulnar transposition were a consideration.  He stated that the carpal tunnel is not clinically significant.  (TR. 334).  The ALJ found that there is no indication that right wrist surgery or ulnar transposition has been performed.  A September, 2002 physical therapy evaluation shows that the plaintiff's right wrist and left shoulder were within functional limits with active and passive range of motion.  (TR. 352)

The ALJ further found that in May, 2003, Dr. Salvagno reported that right wrist surgery was performed by Dr. Stowell in 2002.  (TR. 432).  After the surgery in 2002, the plaintiff

continued to have complaints.  Eventually, the plaintiff
required another surgery in March, 2003, due to nonunion of the
arthrodesis.  Subsequent records from Dr. Stowell show that the
plaintiff continued to have persistent wrist pain and diminished
grip strength, which was expected to last for up to one year
after surgery.  (TR. 444-57).

    The ALJ found that the plaintiff's arm impairments are not
as severe as alleged by the plaintiff.  However, the ALJ's
statement of her analysis does not carefully distinguish between
the plaintiff's left arm condition and right arm condition.  The
medical findings cited by the ALJ do not indicate whether the
plaintiff can or cannot perform fine and gross manipulation.

    When evaluating an individual's credibility, the
regulations require the ALJ to provide specific reasons for the
weight given to the individual's statements.  SSR 96-7p.  An ALJ
is required to provide the objective evidence from which she
deduces her findings in order for a reviewing court to determine
whether the probative evidence has been properly weighed; broad
based statements about the credibility of a claimant are

17

impossible to evaluate in a vacuum. *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir. 1981).   The ALJ here did not draw inferences from objective evidence with regard to the plaintiff's credibility as to his testimony about limitations in the use of his arms.

The ALJ stated as to the ALJ's evaluation of the claimant's credibility:

> If the claimant's statements were accepted in their entirety, he would be unable to perform any work related activity on a sustained basis.  However, for the reasons indicated above, the claimant is not entirely credible regarding the severity and limiting effects of the symptoms.  Therefore, his statements were given weight only to the extent they are supported by the record as a whole.

TR. 18.  This standard for the evaluation of a claimant's credibility is not consistent with the standards for evaluating a claimant's subjective symptoms set forth in the statute, in the case law and in the regulations.  That standard had been accurately stated by the ALJ in the preceding paragraph - a claimant's expressed symptoms must be considered if they are reasonably consistent with the objective medical evidence.   The ALJ, after acknowledging the accepted standard, expresses the

18

concern that the plaintiff's symptoms as he has described them would lead to a finding of a disability.  Instead of then determining whether the symptoms are reasonably consistent with the objective medical evidence, the ALJ then imposes a rule of symptoms rejection unless the symptom is "supported by the record as a whole."  This rigorous standard is applied, furthermore, in a context where the burden had shifted to the Commissioner to show that the claimant has the residual functional capacity to perform substantial gainful activity other than her past relevant work; *i.e.*, in a context where the ALJ had decided that the plaintiff can not perform his past relevant work.

   In the course of explaining her residual functional capacity finding, the ALJ states that Dr. Stowall "only stated that the claimant could not resume his previous level of employment."  TR. 18.  This finding appears to refer to Dr. Stowall's letter of July 28, 2003.  TR. 448.  Dr. Stowall, who had performed a second left wrist surgery on Mr. Kuhn, stated: "He has probably plateaued in terms of therapy, but he's certainly not at a level where he could resume his previous

level of occupation."  The inferences from this statement by
Dr. Stowall drawn by the ALJ, that another level of employment
could be performed, that there is not a medical basis to support
a limitation to part-time work, and that Mr. Kuhn has the
residual functional capacity described at TR. 18-19, are not
reasonably justified.  Nor is the determined residual functional
capacity shown to be affirmatively supported by evidence.
Rather, it is said to be supported by the combination of general
rejection of the plaintiff's credibility explained by the
rationale that the plaintiff if credible is disabled and an
inadequate explanation of the uses made of the medical evidence.


     As the Regulations require, the ALJ examined the medical
evidence that reflects the nature and severity of the
plaintiff's impairments in determining the plaintiff's residual
functional capacity.  Th ALJ considered the opinion of Dr.
Salvagno, the plaintiff's treating physician.  The ALJ accepted
a portion of Dr. Salvagno's assessment, but rejected that
portion of the assessment that restricted the plaintiff to part-

time work.  The plaintiff argues that it was erroneous for the ALJ to reject the treating physician's opinion.

Under the Commissioner's regulations, an administrative law judge is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(d).  Although he must consider all medical opinions, the better an explanation a source provides for an opinion, particularly through medical signs and laboratory findings, the more weight [the administrative law judge] is to give that opinion.  20 C.F.R. § 404.1527(d)(3).  The regulations provide that while treating physicians' opinions may be given more weight, there must be relevant evidence to support the opinion.  20 C.F.R. § 404.1527(d).  The case law provides that while automatic adoption of the opinion of the treating physician is not required. [*See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991)], a treating physician's opinion is to be afforded great weight.

The Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a treating physician in

21

the case of *Morales v. Apfel*, 225 F.3d 310  (3ʳᵈ Cir. 2000).

The Court stated:

> A cardinal principle guiding disability
> eligibility determinations is that the ALJ
> accord treating physicians' reports great
> weight, especially "when their opinions
> reflect expert judgment based on a
> continuing observation of the patient's
> condition over a prolonged period of time."
> *Plummer* [v. *Apfel*, 186 F.3d 422, 429 (3d
> Cir.1999)] (*quoting  Rocco v. Heckler*, 826
> F.2d 1348, 1350 (3d Cir.1987)); *see also
> Adorno v. Shalala*, 40 F.3d 43, 47 (3d
> Cir.1994); *Jones,* 954 F.2d at 128; *Allen
> v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989);
> *Frankenfield v. Bowen,* 861 F.2d 405, 408
> (3d Cir.1988); *Brewster,* 786 F.2d at 585.
> Where, as here, the opinion of a treating
> physician conflicts with that of a
> non-treating, non-examining physician, the
> ALJ may choose whom to credit but "cannot
> reject evidence for no reason or for the
> wrong reason." *Plummer*, 186 F.3d at 429
> (*citing  Mason v. Shalala*, 994 F.2d 1058,
> 1066 (3d Cir.1993)).  The ALJ must consider
> the medical findings that support a
> treating physician's opinion that the
> claimant is disabled. *See Adorno*, 40 F.3d
> at 48.  In choosing to reject the treating
> physician's assessment, an ALJ may not make
> "speculative inferences from medical
> reports" and may reject "a treating
> physician's opinion outright only on the
> basis of contradictory medical evidence"
> and not due to his or her own credibility
> judgments, speculation or lay opinion.
> *Plummer*, 186 F.3d at 429; *Frankenfield v.*

> *Bowen*, 861 F.2d 405, 408 (3d
> Cir.1988);  *Kent*, 710 F.2d at 115.

*Id.* at 317-318.


The social security regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is to be given controlling weight.  20 C.F.R. §416.927(d)(2).  When the opinion of a treating physician is not given controlling weight, the length of the treatment relationship and the frequency of examination must be considered.  The Regulations state:

> Generally, the longer a treating source has
> treated you and the more times you have been
> seen by a treating source, the more weight
> we will give to the source's medical
> opinion. When the treating source has seen
> you a number of times and long enough to
> have obtained a longitudinal picture of your
> impairment, we will give the source's
> opinion more weight than we would give it if
> it were from a nontreating source.

23

20 C.F.R. §416.927(d)(2)(I).  Additionally, the nature and
extent of the treatment relationship is considered. The
Regulations state:

> Generally, the more knowledge a treating
> source has about your impairment(s) the more
> weight we will give to the source's medical
> opinion. We will look at the treatment the
> source has provided and at the kinds and
> extent of examinations and testing the
> source has performed or ordered from
> specialists and independent laboratories.
> For example, if your ophthalmologist notices
> that you have complained of neck pain during
> your eye examinations, we will consider his
> or her opinion with respect to your neck
> pain, but we will give it less weight than
> that of another physician who has treated
> you for the neck pain. When the treating
> source has reasonable knowledge of your
> impairment(s), we will give the source's
> opinion more weight than we would give it if
> it were from a nontreating source.

20 C.F.R. §416.927(d)(2)(ii).

The ALJ determined that there is no medical basis to
support a finding that the plaintiff is restricted to part-time
work.  The plaintiff argues that the ALJ did not cite to any
contrary medical evidence to support a finding of a capacity on
the plaintiff's part for sustained, full-time work.

24

In concluding that Dr. Salvagno's assessment should not be accepted in it's entirety, the ALJ found that the plaintiff has limitations resulting from upper extremity impairments, but that the evidence fails to show that such limitations are disabling. (TR. 17). In January, 2002, Dr. Salvagno indicated that the plaintiff would be disabled from work because the manual labor was causing more problems with shoulders. (TR. 334). Similarly, in June, 2002, Dr. Salvagno reported that the plaintiff could not do any heavy manual labor or repetitive labor using the upper extremities. (TR. 333). Subsequently, in May, 2003, Dr. Salvagno completed a functional assessment that reflected that the plaintiff was capable of lifting 10 pounds frequently and 20 pounds occasionally and that he could perform manipulative activities such as reaching, fingering and feeling occasionally. (TR. 432). Dr. Salvagno also found that the plaintiff could stand and/or walk for approximately 6 hours in an 8 hour workday and could sit for 4 to 6 hours. (TR. 434-35).

The ALJ construed Dr. Salvagno's residual functional capacities assessment to indicate that the plaintiff can lift

25

and carry at the light exertional level, and has a limited use

of the arms, but otherwise has no significant limitations.

(TR. 432-39).  The ALJ determined that the evidence found no

severe leg impairment(s) warranting limitation(s) in the

claimant's ability to stand or walk in a work setting with

normal breaks.

The plaintiff argues that in rejecting Dr. Salvagno's

opinion that the plaintiff is restricted to part time work, the

ALJ "cited no contrary medical evidence to support a capacity

for sustained, full-time work," and that, "absent a reference

to such evidence, a rejection of Dr. Salvagno's opinion as a

treating physician is inappropriate."  (Doc. 6, p.13).

In rejecting Dr. Salvagno's opinion, the ALJ stated that

"while the treating source statements/ limitations reasonably

would preclude his past jobs and are favorable to the claimant

with regard to worker's compensation, they do not support a

finding that he is incapable of performing other less demanding

work within the restrictions indicated."  (TR. 17).  The ALJ

does not cite to any medical findings that show that the

plaintiff is capable of more than part-time work, as indicated by his treating physician.  The Third Circuit has held that "[i]n choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's medical opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).  An opinion that a person is limited to part-time work is a medical-vocational opinion.  The argument can be made that a determination of a limitation to part-time work goes beyond the appropriate range of a medical expert's expertise.  The ALJ did not explore the medical and the vocational components of the treating physician's opinion.  A residual functional capacities assessment is no less a combination of medical and functional considerations and factors than an assessment of limitations as to the number of hours that a person can work in a day.  The ALJ referred to no contradictory medical evidence in rejecting the treating physician's opinion.  This was an error warranting a remand.

In addition to finding that the plaintiff is capable of full-time work, the ALJ found, based on the plaintiff's residual functional capacity, that the plaintiff is capable of performing a significant range of light work as defined in 20 C.F.R. §404.1567.  However, in determining that the plaintiff is capable of a significant range of light work, the ALJ did not address a crucial piece of testimony.  At the hearing, the vocational expert testified that an individual with the same residual functional capacity as the plaintiff might only be able to perform twelve percent of the range of all light jobs. Furthermore, there is no way to ascertain from the record the further reduction of this percentage based upon the plaintiff's skill, education and other limitations.

If this percentage is reduced even further by these additional factors, a finding that the plaintiff is capable of performing light work is not supported by substantial evidence. As discussed above, if the plaintiff is capable of performing no more than sedentary work, a finding of disability is required.   The Commissioner must determine whether the plaintiff is capable of performing a significant range of light

work despite his inability to perform a high percentage of jobs in that category.

The plaintiff also argues that the Commissioner did not meet her burden at step five of the sequential evaluation.  The plaintiff contends that the vocational expert's testimony does not support the ALJ's finding that the plaintiff is capable of performing light work within the national economy.

"While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).  A hypothetical question posed to a vocational expert "must reflect *all* of a claimant's impairments." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (emphasis added).

The ALJ found that the plaintiff is capable of a significant range of light work, with certain restrictions.  The ALJ informed the vocational expert that the plaintiff was capable of occasional reaching and handling with the left arm and limited repetitive work with the right.  (TR. 69).  Based on the restrictions set forth by the ALJ, the vocational expert testified that the plaintiff could work as a sedentary level unskilled charge account clerk and a light level unskilled information clerk.  (TR. 71-72).  The plaintiff argues that the ALJ did not meet her burden at step 5 because the restrictions conflicted with the plaintiff's occupational classification in the Dictionary of Occupational Titles ("DOT").

The DOT states that an information clerk does the following:

> Provides travel information for bus or train patrons:
> Answers inquiries regarding departures, arrivals,
> stops, and destinations of scheduled buses or trains.
> Describes routes, services and accommodations
> available.  Furnishes patrons with timetables and
> travel literature.  Computes and quotes rates for
> interline trips, group tours, and special discounts
> for children and military personnel, using rate
> tables.

30

The position of information clerk requires frequent reaching and handling, actions that are inconsistent with the plaintiff's residual functional capacity as determined by the ALJ.  Where such a conflict exists, the vocational expert's testimony can not be considered substantial evidence.  *Rosser v. Chater,* CCH Unemp. Ins. Rep. § 14.717B, 1995WL 458892 (L.D.Pa. 1995).  The ALJ must ask the vocational expert if any of the vocational expert's testimony conflicts with the DOT.  If there is a conflict, the ALJ must obtain a reasonable explanation for the conflict, resolve the conflict and explain the resolution of the conflict in the decision.  SSR 00-4p.

Here, the ALJ did not take the proper steps to resolve the conflict.  In fact, neither the vocational expert nor the ALJ in her opinion acknowledged the conflict between the vocational expert's testimony and the DOT or explained why the vocational expert's testimony should be relied on despite the conflict.  Therefore, the vocational expert's testimony does not serve as substantial evidence that jobs exist in the economy that the plaintiff is capable of

performing.  Because the burden rests with the Commissioner at this stage in the proceedings, the ALJ failed to meet her burden at step 5.

The plaintiff argues that reversal is the only appropriate remedy in this case.  In support of reversal, the plaintiff cites *Allen v. Bowen,* 881 F.2d 37 (3d Cir. 1989).  In *Allen,* the Court held that because the Secretary had a full and fair opportunity to develop the administrative record and because the claimant had established a *prima facie* case of entitlement, reversal was proper.  881 F.2d at 44.  The *Allen* holding, however, does not create a general rule that an unexplained conflict between a vocational expert's testimony and the DOT necessarily requires reversal.  *Boone v. Barnhart,* 353 F.3d 203, 206 (3d Cir. 2003).  Rather, *Allen* stands for the proposition that reversal and direct awarding of benefits is proper where there are "no questions of evidence left to determine."  *See Raymer v. Massanari,* 2001 WL 1526265 (E.D. Pa. 2001).

The case at hand does not meet the *Allen* criteria for reversal.  As discussed throughout, there are pieces of evidence that may be resolved by the ALJ.  If the ALJ can highlight such evidence in the record to support her finding of "not disabled," perhaps she can properly support her conclusion.  Therefore, while reversal is not the proper remedy, the vocational expert's testimony in this case in not substantial evidence and remand is proper.  Finally, the plaintiff argues that the ALJ erred in finding the plaintiff's tarsal tunnel syndrome to be a non-severe impairment.

An impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1521(a), 416.921(a).  A determination of whether an impairment is "severe" is based solely on medical factors affecting a claimant's ability to perform basic work activities and does not include consideration of vocational factors such as age, education, and work experience.  *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20

C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities

are defined in the regulations as the abilities or

aptitudes necessary to do most jobs.  20 C.F.R. §§

404.1521(b), 416.921(b).  An impairment or combination of

impairments is not severe when medical evidence establishes

only a slight abnormality or a combination of slight

abnormalities which would have no more than a minimal

effect on an individual's ability to perform basic work

activities.


     The plaintiff argues that it was erroneous for the ALJ

to conclude that the plaintiff's tarsal tunnel was non-

severe on the basis that the plaintiff did not register

significant complaints regarding his lower extremities at

the time of his alleged onset date in June 2002.  It is

true that the ALJ did not find any documentation of

significant or persistent lower extremity complaints as of

the onset date.  However, the ALJ found the plaintiff's

tarsal tunnel syndrome to be non-severe because the

evidence fails to establish medical findings or degree of

treatment consistent with severe lower extremity impairment

warranting limitation in the plaintiff's ability to stand or walk in a work setting with normal breaks.

The plaintiff was diagnosed with tarsal tunnel in April, 2003.  (TR. 417).  Testing performed at that time only indicated the presence of tarsal tunnel, but failed to indicate the severity or functional limitations of the condition.  (TR. 417).  He claims that the tarsal tunnel causes pain and numbness that radiates up his legs and pain after standing on hard floors for 10 minutes.  However, Dr. Stowell reported that he told the plaintiff that the tarsal tunnel would not account for such a distribution of pain. Dr. Stowell recommended that the plaintiff see a foot and ankle specialist but the evidence does not indicate that the plaintiff pursued treatment or further evaluation for this condition.  (TR. 445).  Furthermore, the ALJ found that the evidence fails to establish that this impairment lasted or could be expected to last for a continuous 12-month period.

The ALJ found that the evidence does not support finding that the plaintiff's tarsal tunnel significantly limits his physical or mental abilities to do basic work activities.  Therefore, the ALJ properly concluded that the tarsal tunnel was a non-severe impairment.

Based on the foregoing, it is recommended that this case be remanded to the Commissioner for further consideration.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:   January 20, 2005.