IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRY L. KUHN, | : |
| | : |
| Plaintiff, | : |
| | : **CIVIL ACTION NO. 3:04-1280** |
| vs. | : |
| | : (JUDGE NEALON) |
| JO ANNE B. BARNHART, | : (MAGISTRATE JUDGE SMYSER) |
| Commissioner of Social Security, | : |
| | : |
| Defendant. | : |

**MEMORANDUM and ORDER**

This is a Social Security/Disability matter which comes before the Court on the Plaintiff's appeal from the denial of disability benefits by the Defendant, Commissioner of Social Security. The matter was referred to United States Magistrate Judge J. Andrew Smyser for initial consideration. On January 20, 2005, the Magistrate Judge filed a Report and Recommendation in which he recommended that the Plaintiff's appeal be remanded to the Commissioner for further consideration. (Doc. 9). The Government filed Objections to the Report and Recommendation on February 4, 2005. (Doc. 10). The Plaintiff filed a reply to those Objections on February 14, 2005. (Doc. 11). The matter is ripe for disposition and, for the reasons that follow, the Report and Recommendation will be adopted and the case remanded to the Commissioner for further proceedings.

**I. Standard of Review**

Pursuant to the Federal Magistrates Act, when objections to a report and recommendation have been filed, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions." 28 U.S.C. § 636(b)(1)(C).  This matter will be reviewed de novo to those portions of the Report and Recommendation to which objections were filed.

**II. Procedural Background**

The Plaintiff, Terry L. Kuhn, filed an application for Disability Insurance Benefits on November 20, 2002, alleging an inability to work as of June 27, 2002, due to back problems. (R. 14-15).  His request for benefits was denied at the initial level and he filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (R. 14).  A hearing was held before the ALJ on January 7, 2004, which resulted in a decision, unfavorable to the Plaintiff, being issued on January 23, 2004.  (*Id.*).  The Plaintiff then requested review by the Appeals Council which, by Notice of Action, dated April 29, 2004, declined review of that decision, making the decision of the ALJ the final decision of the Commissioner of Social Security. (R. 6-8). This appeal followed on June 14, 2004.

On October 4, 2004, the Plaintiff filed a brief in support of his appeal wherein he argued that the ALJ's finding that he is capable of performing more than sedentary work is not supported by substantial evidence, that the testimony of the vocational expert does not support the ALJ's findings that Plaintiff is capable of performing light work within the national economy and, finally, that the ALJ erred in concluding that Plaintiff's tarsal tunnel syndrome was a non-severe impairment. (Doc. 6). The Government filed an opposing brief on November 8, 2004. (Doc. 7). A reply brief was submitted by Plaintiff on November 15, 2004. (Doc. 8). The Magistrate Judge issued a report filed a Report and Recommendation on January 20, 2005, recommending that the matter be remanded to the Commissioner. (Doc. 9). Timely objections, and a response thereto, followed. (Docs. 10-11).

**III. Disability Determination Process**

The Social Security Regulations establish a five-step evaluation process which is used to determine if a person is entitled to disability benefits. *See* 20 C.F.R. § 404.1520. If at any step in the process the Commissioner finds that a Plaintiff is disabled or not disabled, review does not proceed any further. 20 C.F.R. §§ 404.1520, 416.920. The steps in the process are as follows: 1) Is the individual engaging in substantial gainful activity? 2) Does the individual have a severe impairment? 3) Does the individual have an impairment which meets or equals the listing of impairments as set forth in 20 C.F.R. part 404, subpart P, *appendix* 1? 4) Does the individual retain the residual functional capacity to engage in his/her past relevant work? and 5) If an individual does not have the capacity to engage in his/her

past work, does s/he retain the capacity to perform jobs which exist in significant numbers in the national economy. *See* Social Security Ruling 86-8; 20 C.F.R. §404.1520.

In the present case, the ALJ denied the Plaintiff benefits at step 5 of the sequential disability evaluation process when she concluded based on his age, education, residual functional capacity ("RFC") that he was able "to perform a significant range of light work" and that "there are a significant number of jobs in the national economy that he could perform." (R. 21-22).

**IV. Discussion**

When reviewing the denial of disability benefits, it must be determined whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620 (1966)(cited in *Richardson v. Perales*, *supra*). "Substantial

evidence had been ... defined as 'enough [evidence] to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' *NLRB v. Columbian Enameling & stamping Co.*, 306 U.S. 292, 300 (1939)," *Olsen v. Schweiker*, 703 F.2d 751, 753 (3rd Cir. 1983).

In the Report and Recommendation, the Magistrate Judge determined that the inferences drawn by the ALJ with respect to a letter by Dr. Ralph Salvagno, the treating physician, were not reasonably justified and, further, that in rejecting Dr. Salvagno's assessment of Plaintiff, the ALJ erred by failing to cite contradictory medical evidence. Additionally, the Report and Recommendation challenged the conclusion that Plaintiff was capable of performing light work, and that this finding was supported by substantial evidence, and also found that the ALJ failed to carry her burden in the sequential evaluation necessary for determining whether the claimed impairment prevented performance of other work. The Magistrate Judge concluded that these errors warranted a remand to the Commissioner but also upheld the determination by the ALJ that Plaintiff's tarsal tunnel syndrome was a non-severe impairment.[1]

The Government presents the following grounds as objections to the Report and Recommendation:

> 1. The Report and Recommendation was in error in concluding that the medical findings cited by the ALJ do not indicate whether Plaintiff can or cannot perform fine and gross motor manipulation, and that the ALJ's

---

[1] There is no objection to this finding and, consequently, it need not be reexamined.

analysis does not carefully distinguish between his left and right arm conditions.

2. The Report and Recommendation erred in finding that the ALJ conducted an improper credibility analysis.

3. The Report and Recommendation erroneously determined that the residual function capacity, as found by the ALJ, was not supported by the evidence inasmuch as the ALJ improperly analyzed that evidence.

4. It could not be determined whether the percentage of light jobs identified by the vocational expert was further diminished by Plaintiff's skill, education and other limitations.

5. The Report and Recommendation erred in stating that the ALJ failed to take the proper steps to resolve the conflict between the testimony of the vocational expert and the Dictionary of Occupational Titles (DOT).

(Doc. 10). Each of these will be addressed *in seriatim*.

   *1. Distinguishing between left and right arm conditions*

The ALJ concluded that the medical evidence submitted by the Plaintiff failed to establish that Plaintiff was capable of performing fine and gross motor manipulation, based on his ability to perform routine daily tasks such as using a telephone, tying shoes, and using utensils, which she determined to be substantial evidence of his fine and gross motor manipulation capabilities.  The ALJ also made findings with respect to Plaintiff's left arm and right arm conditions, however, the Magistrate Judge opined that the analysis failed to carefully distinguish between the two.  While the ALJ stated that the residual functional

capacity ("RFC") included certain restrictions as to each the left and right upper extremities, the restrictions applied appear to conflict with other tasks she found were retained. Moreover, she did not correlate the medical to evidence to Plaintiff's right and left arm conditions or fine and gross motor manipulations, and the medical evidence supporting the ALJ's determinations are not referenced. Thus, it cannot be concluded that these findings are supported by substantial evidence because there exists an inability to determine upon what evidence such judgments are based. In *Burnett v. Commissioner of Social Security*, 220 F.3d 112 (3rd Cir. 2000), the Court of Appeals for the Third Circuit stated: "In making a residual functional capacity determination, the ALJ must consider all evidence before him . . . . Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Id*. at 121(internal citations and quotations omitted).   Consequently, remand on these issues is appropriate.

    *2. Credibility analysis*

In her report, the ALJ found that Plaintiff "[was] not entirely credible." (R.17).  In rejecting this conclusion, the Report and Recommendation noted that the ALJ did not apply the proper credibility analysis, inasmuch as she rejected his symptoms that were not "supported by the record as a whole," rather that considering whether Plaintiff's expressed symptoms were reasonably consistent with the objective medical evidence.  The

7

Commissioner, however, asserts that the Report and Recommendation overlooked those portions of the ALJ's decision where "she compared Plaintiff's subjective claims with the objective medical evidence, his medications and his daily activities," thus performing a proper credibility determination.

The Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. §404.1529. First, symptoms, such as pain, shortness or breath, fatigue, *et cetera,* will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §404.1529(b). Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. §404.1529(b). In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. §404.1529(b). Social Security Ruling 96-7p gives the following instructions in evaluating the credibility of the claimant's statements regarding his or her symptoms: "In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an

individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p.

Given this framework, the court cannot conclude that the ALJ conducted an acceptable credibility analysis of Plaintiff in light of the objective medical evidence. The ALJ's conclusion regarding Plaintiff's credibility are general and fail to reference sufficient specificity. Such analysis, as noted in the Report and Recommendation, must determine whether a claimant's subjective complaints are reasonably consistent with the objective medical evidence. Rather than applying this standard, the ALJ rejected those subjective complaints that were not supported by the record as a whole. Consequently, this assessment is contrary to the standard regulations to be applied, and remand on this issue is proper.

*3. Medical Evidence and Residual Functional Capacity*

Because the court has concluded that the ALJ improperly analyzed the medical evidence, her conclusions regarding Plaintiff's RFC are not supported by the evidence. As noted by the Magistrate Judge, in determining the RFC, the ALJ addressed a letter written by Dr. Stowall, which stated that Plaintiff "was not at a level where he could resume his previous level of occupation." While this statement indicated only "that [Plaintiff] could not resume his previous level of employment," being full time work, the ALJ inferred that part-time employment was possible inasmuch as there was no medical evidence limiting his ability to engage in part-time work. However, the ALJ has an obligation to develop a "full and fair" record. *McShea v. Schweiker* 700 F.2d 117, 119 (3rd Cir. 1983). "If [an] ALJ

believe[s] [the] evidence was inconclusive or unclear, it [is] incumbent upon [her] to secure whatever evidence [she] believed [is] needed to make a sound determination," *Ferguson v. Schweiker*, 765 F.2d 31, 36 (3rd Cir 1985). Again, however, because Dr Stowall's letter addressed only Plaintiff's inability to engage in his previous level of employment, which was full-time work, drawing an inference therefrom as to part-time employment does not necessarily follow.

Moreover, Dr. Salvagno, the treating physician, noted, amongst other findings, that Plaintiff was limited to part-time work. While giving deference to his other assessments and accepting his judgment about Plaintiff's condition in other respects, the ALJ rejected this finding, but failed to cite contrary medical evidence to support the decision that Plaintiff was not so restricted. "In choosing to reject the evaluation of a treating physician, 'an ALJ may not make speculative inferences from medical reports and may reject the treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Rieder v. Apfel*, 115 F.Supp. 2d 496, 501 (M.D. Pa. 2000) (*quoting Morales v. Apfel*, 225 F.3d 310, 316 (3rd Cir. 2000). The ALJ erred in failing to cite contradictory evidence as is required in rejecting the treating physician's opinion. Accordingly, the Report and Recommendation properly concluded that this finding could not be reasonably justified and remand on this issue is also warranted.

*4. Vocational Expert and Erosion of Jobs*

The ALJ concluded that Plaintiff was capable of performing a significant range of

10

light work and the vocational expert testified that, given his RFC, he might only be able to perform twelve percent of the range of light jobs.  However, the Magistrate Judge stated that whether this figure was further eroded by Plaintiff's skill, education and other limitations could not be determined from the record.  While the Commissioner has raised an objection to this finding, this determination was premised upon Plaintiff's RFC, as found by the ALJ, which this court has concluded was unsupported by the evidence and was improperly analyzed.  "A hypothetical question must reflect all a claimant's impairments that are supported by the record; otherwise the expert's answer to it cannot be considered substantial evidence."  *Chrupcala v. Heckler*, 829 F.2d 1269 (3rd Cir. 1987).  Inasmuch as the question posed to the vocational expert did not reflect all impairments reflected in the record, remand on this issue likewise is necessary.

       5. *Vocational Expert and Dictionary of Occupational Titles (DOT)*

Although the ALJ concluded that Plaintiff was capable of performing a significant range of light work, with restrictions, the Report and Recommendation correctly rejected this finding inasmuch as, considering his restrictions, the positions identified by the vocational expert conflicted with his RFC and occupational classification in the <u>Dictionary of Occupational Titles</u> ("<u>DOT</u>").  Specifically, the vocational expert listed the position of an information clerk and, based on the description in the <u>DOT</u>, the Magistrate Judge determined that the job requires frequent reaching and handling.  An ALJ must inquire whether the vocational expert's testimony conflicts with the DOT since a vocational expert's testimony

11

cannot be considered substantial evidence in the face of such conflict. Because neither the ALJ nor the vocational expert acknowledged this conflict, nor was there an attempt to resolve this incompatibility through the proper steps, the vocational expert's testimony cannot be considered substantial evidence of jobs which Plaintiff is able to perform and which exist in the national economy.  The court agrees with the Report and Recommendation that the information clerk position could require frequent reaching and handling, in light of which, further inquiry is required.  Because the burden at Stage 5 of the sequential analysis lies with the Commissioner, who failed to carry that burden here, remand on this issue is also necessary.

## V. Conclusion

Based on the foregoing, the matter will be remanded to the Commissioner for consideration consistent with this Memorandum.  An appropriate Order follows

Date:  April 27, 2005                              <u>s/ William J. Nealon</u>
                                                   United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRY L. KUHN, : | |
| Plaintiff, : | |
| : | **CIVIL ACTION NO. 3:04-1280** |
| vs. : | |
| : | (JUDGE NEALON) |
| JO ANNE B. BARNHART, : | (MAGISTRATE JUDGE SMYSER) |
| Commissioner of Social Security, : | |
| Defendant. : | |

**ORDER**

**AND NOW**, this 27th day of APRIL, 2005, consistent with the accompanying Memorandum of this date, **IT IS HEREBY ORDERED THAT**:

(1) The Magistrate Judge's Report and Recommendation (Doc. 9) is **ADOPTED**.

(2) The Plaintiff's appeal is **REMANDED** to the Commissioner.

(3) The Clerk of Court is directed to close this case.

s/ William J. Nealon
United States District Judge

13